LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
STEVEN G. WILLIAMSON (State Bar No. 343842)
swilliamson@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYA LAU,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; ALEX VILLANUEVA; MARK LILLIENFELD; and TIM MURAKAMI,<br><br>　　　　Defendants. | **CASE NO. 2:25-cv-04766 SPG (BFMx)**<br><br>**DECLARATION OF JASON H. TOKORO IN SUPPORT OF DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFF MAYA LAU'S COMPLAINT FOR DAMAGES AND OTHER RELIEF**<br><br>[*Filed Concurrently with Notice of Motion; Memorandum of Points and Authorities; Request for Judicial Notice and [Proposed] Order*]<br><br>Date:　September 10, 2025<br>Time:　1:30 p.m.<br>Crtrm.:　5C - First Street Courthouse<br><br>Assigned to the Hon. Sherilyn Peace Garnett, Crtrm. 5C and Magistrate Judge Brianna Fuller Mircheff, Crtrm. 780<br><br>Trial Date:　None Set |

739307.2

# DECLARATION OF JASON H. TOKORO

I, Jason H. Tokoro, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Miller Barondess, LLP, counsel of record for Defendant County Of Los Angeles. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to all of said facts. I make this declaration in support of Defendant County of Los Angeles' Motion to Dismiss Plaintiff Maya Lau's Complaint for Damages and Other Relief.

## Plaintiff Maya Lau

2. Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff's LinkedIn page from August 1, 2025, which illustrates that Plaintiff's place of residence is Mexico City, Mexico, not Los Angeles, California.

3. Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's website from August 1, 2025, which discusses her current employment as a podcast host regarding personal finances.

## Parties' Meet and Confer Efforts

4. On July 11, 2025, the County sent Plaintiff a letter, discussing the County's intended motion to dismiss and requesting a meet and confer. Attached hereto as **Exhibit 3** is a true and correct copy of that letter.

5. On July 17, 2025, at 9:00 a.m., the parties met and conferred about the County's intended motion via a Microsoft Teams video conference, where they thoroughly discussed the substance and potential resolution of the filed motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of August, 2025, at Los Angeles, California.

/s/ *Jason H. Tokoro*
Jason H. Tokoro

739307.2

2

TOKORO DECLARATION IN SUPPORT OF DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFF MAYA LAU'S COMPLAINT FOR DAMAGES AND OTHER RELIEF

## INDEX OF EXHIBITS TO THE DECLARATION OF JASON H. TOKORO

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| 1. | Maya Lau LinkedIn Profile | 4-10 |
| 2. | Maya Lau Website Excerpt | 11-15 |
| 3. | July 11, 2025 Meet and Confer Letter | 16-20 |

739307.2

3

TOKORO DECLARATION IN SUPPORT OF DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFF MAYA LAU'S COMPLAINT FOR DAMAGES AND OTHER RELIEF

# EXHIBIT 1

EXHIBIT 1
Page 4



EXHIBIT 1
Page 5



EXHIBIT 1
Page 6

Activities and societies: Vassar Repertory Dance Theatre, member and choreographer; Vassar Haiti Project; Asian Student's Alliance

Honors in International Studies and General Honors

## Skills

**Blogging**

 Endorsed by 8 colleagues at Peace Corps

 31 endorsements

**Editing**

 Endorsed by 13 colleagues at Peace Corps

 Endorsed by 6 people who know the skill

 30 endorsements

Show all 9 skills →

## Recommendations

**Received**   Given



**Taylor Winters** · 3rd
Executive Coach
December 19, 2023, Maya was Taylor's client

Maya is a truth seeker. Her approach to asking life's difficult questions is disarmingly charming and creative. Listening to her conversations with others, you'll find you're changing the conversation with yourself. She offers you a chance to shift your perspective as you connect with another person's story. Working with her or benefiting from her work, you will come away with fresh insight, ideas, and a levity that contrasts positively with the topics she's tackling.



**Jessica Carew Kraft** · 3rd
Author of Why We Need to Be Wild, (Sourcebooks, 2023, 2024). Book Editor, Artist, Mother.
November 12, 2021, Jessica Carew was Maya's mentor

Maya is an astute observer and researcher whose vast reporting experience provides her with the chops to tackle a range of assignments. I have been impressed with her targeted approach to writing and editing work, and highly recommend her for anyone looking for a smart, thoughtful writer with the ingenuity and bravery to dig deep into contemporary issues. Maya has a great work ethic and always considers the big picture. She has top-rate work experience with prestigious publications, as well as an entrepreneurial mindset that keeps her motivated and reaching for the nex...

Show all 4 received →

## Honors & awards

**Investigative Reporters and Editors Award 2015**
Issued by IRE · Jun 2016

PRINT/ONLINE - SMALL - "The Louisiana State Penitentiary: Where inmates aren't the only scoundrels," The Advocate, by Maya Lau, Gordon Russell and Steve Hardy...

## Languages

EXHIBIT 1
Page 7



EXHIBIT 1
Page 8



EXHIBIT 1
Page 9



EXHIBIT 1
Page 10

# EXHIBIT 2

EXHIBIT 2
Page 11

Maya Lau

About     Work     Podcast

Contact



# I'm the creator, host and executive producer of a new podcast: "Other People's Pockets."

My podcast, a production of Pushkin Industries and Little Everywhere, offers a bit of financial voyeurism and salary transparency. I ask people how much money they make, how they feel about it, how they got to where they are, what their upbringing around money was, and more.

I also have my own company where I do financial investigation in the investment world.

I previously worked as an analyst at a research firm where I used open-source intelligence to uncover fraud and misconduct.

I'm a former investigative reporter at The Los Angeles Times. My work has revealed names on a secret list of Sheriff's deputies with histories of misconduct, prompting the district attorney to review past criminal cases featuring some of those officers. The list was so secret even prosecutors couldn't access it.

EXHIBIT 2
Page 12

# Maya Lau

About   Work   Podcast

Contact

**My work, in collaboration with my amazing colleagues, helped to bring about new laws that reversed decades of secrecy in police disciplinary files.**

After I broke the news that the sheriff was reinstating deputies who'd been fired for misconduct, the county moved to block his actions, sparking a legal battle that tested — for the first time — some of the limits of the sheriff's authority. I also landed scoops showing that the sheriff was killing internal misconduct investigations, and that new gangs of deputies with matching skull tattoos were emerging in the department, drawing the attention of the FBI.

I previously covered criminal justice at The Advocate, Louisiana's largest daily newspaper, based at its headquarters in Baton Rouge. There, I was a lead writer on a team that won a national Investigative Reporters and Editors award, for our investigation into the business dealings of Burl Cain, the long-serving warden of the notorious Angola Prison, who resigned following our stories. Our work also revealed the network of cronies and family members controlling the state's prison system and spurred criminal investigations into prison officials, some of whom have been arrested and indicted.

While at The Advocate, I covered the fatal shooting of Alton Sterling by Baton Rouge Police, the killings of three law enforcement officers in Baton Rouge, and widespread flooding that claimed more than a dozen lives. My first journalism job was at The New York Times Magazine.

**But I truly learned how to knock on doors and dig up documents by moving to Louisiana and working in the**

EXHIBIT 2
Page 13

# Maya Lau

About   Work   Podcast   Contact

I served as a Peace Corps volunteer in Senegal, a few years after I graduated from Vassar College.

Photo credit: Brandon Hill



Follow me on Twitter

# Maya Lau

About   Privacy Policy
Work    Terms & Conditions
Contact Site Credits

EXHIBIT 2
Page 14

Maya Lau

About   Work   Podcast

Contact

EXHIBIT 2
Page 15

# EXHIBIT 3

EXHIBIT 3
Page 16

## MILLER BARONDESS, LLP

ATTORNEYS AT LAW
2121 AVENUE OF THE STARS
26TH FLOOR
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400
FAX: (310) 552-8400
WWW.MILLERBARONDESS.COM

July 11, 2025

JASON H. TOKORO
DIRECT DIAL: (310) 552-5226
JTOKORO@MILLERBARONDESS.COM

*VIA ELECTRONIC MAIL ONLY*

Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, IL  60607
Email: megan@loevy.com

    Re:    *Maya Lau v. County of Los Angeles, et al.*
               USDC Case No. 2:25-cv-04766 SPG (BFMx)

Dear Ms. Pierce:

     This letter is intended to meet and confer with you about the County's forthcoming Motion to Dismiss.  A summary of our positions is outlined below.

**Plaintiff's Claims**

     Plaintiff, a former reporter for the Los Angeles Times, alleges she was the subject of a secret investigation conducted by former Los Angeles County Sheriff Alex Villanueva and two of his employees (the "Individual Defendants").  (Compl. ¶¶ 52–54.)  Plaintiff was never aware of the investigation while it was ongoing, and only learned of its existence after the California Attorney General declined to pursue the matter in 2024—years after Plaintiff left the Los Angeles Times to pursue another career.  (*Id.* ¶¶ 3, 64.)

     Plaintiff sued the Individual Defendants, as well as the County.  She brings five claims in total: (1) First Amendment Retaliation; (2) Conspiracy to Deprive Constitutional Rights; (3) *Monell*; (4) Bane Act; and (5) Civil Conspiracy.  Claim numbers 1, 2, and 5 are asserted against the Individual Defendants only; however, Plaintiff seeks to hold the County liable for their actions under *Monell*.  For the reasons explained below, the County cannot be held liable.

**Government Investigations Are Privileged**

     All of Plaintiff's claims are premised upon the Individual Defendants' alleged criminal investigation of Plaintiff, which the Attorney General declined to pursue due to a lack of

744406.2

EXHIBIT 3
Page 17

**Miller Barondess, LLP**

Megan Pierce
July 11, 2025
Page 2

evidence. (Compl. ¶¶ 14–16.) Accepting Plaintiff's allegations as true that this was an official investigation, the County cannot be held liable because such actions are privileged.

Various immunities codified in the California Government Code apply here. For example, section 815 provides that the County cannot be held liable unless its employees are found responsible. Section 820.2 is equally clear that public employees are not liable where the tort in question was the result of an exercise of that individual's discretion. *See Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1437 (1988). Section 821.6 provides immunity for the institution of judicial or administrative proceedings. And section 820.4 provides that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law."

Government Code section 815 must be read together with section 815.2. *Glair v. City of Los Angeles*, No. CV 13-8946 GAF(JCGx), 2014 WL 12933137, at *3 (C.D. Cal. Feb. 19, 2014). Section 815.2(b) provides that a public entity cannot be liable "for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b). "In other words, if a public employee whose actions form the basis of a plaintiff's complaint would be immune from liability, the public entity to which he belongs would also be immune." *Glair*, 2014 WL 12933137, at *3.

So to the extent that Plaintiff alleges that the Individual Defendants carried out an official Sheriff's Department investigation into suspected criminal activity, such conduct is privileged.

**Plaintiff's Bane Act Claim Fails**

"A defendant is liable [under the Bane Act] if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012). "[T]he statute was intended to address only egregious interferences with constitutional rights, not just any tort." *Ctr. for Bio-Ethical Reform, Inc. v. Irvine Co., LLC*, 37 Cal. App. 5th 97, 115 (2019) (alteration in original) (citation omitted).

Here, Plaintiff alleges that she did not even find out about the investigation until years after it concluded. She does not allege any facts regarding "threats, intimidation, or coercion." Indeed, by the time she found out about the investigation, she had already left the Los Angeles Times to pursue another career. Plaintiff's Bane Act claim fails as a matter of law, and cannot be cured by amendment.

**Plaintiff Fails to Allege Facts to Support Any Redressable Injury**

Even accepting all Plaintiff's allegations as true, she does not allege any sort of redressable injury. Villanueva has not been sheriff since 2022, when he was voted out of office. So even assuming he wielded a "policy" of investigating his political foes, such a policy is not in

Miller Barondess, LLP

Megan Pierce
July 11, 2025
Page 3

place under the current administration. Indeed, nowhere in Plaintiff's complaint does she allege that, since Sheriff Robert Luna took office in December 2022, the Sheriff's Department has conducted retaliatory investigations into political opponents. Nor can she. So there is no "policy" to cease.

Plaintiff also states no facts in support of any monetary damages. She does not, and cannot, allege that the investigation affected her job at the Los Angeles Times. She left the Los Angeles Times years before the investigation became public. Plaintiff also does not allege that she lost out on any other employment or business opportunities as a result of the investigation. At most, she claims that she suffers "anxiety." (Compl. ¶ 84.) This vague assertion, without more, cannot satisfy the Rule 12(b)(6) standard.

Furthermore, Plaintiff's Complaint admits that she did not suffer any adverse consequences as a result of the investigation. She did not know about it while it was happening. And she only found out about it after the Attorney General declined to pursue criminal charges. Meaning, Plaintiff never faced any criminal charges and was not harmed in any way.

**The Individual Defendants' Actions Were Outside the Course and Scope**

To the extent Plaintiff contends the investigation was brought about as revenge by the Individual Defendants (e.g. Compl. ¶ 59), the County cannot be held liable because such conduct falls outside the course and scope of the Individual Defendants' employment. "[V]icarious liability is deemed inappropriate where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute . . . or is the result of a personal compulsion." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1006 (1995); *Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) ("under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.")

In essence, Plaintiff alleges that former Sheriff Villanueva targeted Plaintiff and other individuals (including County officials) because he did not like them. That has nothing to do with the County, but is solely based on perceived personal disputes between Villanueva and others. Such conduct cannot support vicarious liability as a matter of law. So to the extent the individual defendants took these actions as alleged, the County cannot be held liable for them.

\*    \*    \*

Please let us know when you are available to discuss these issues during the week of July 14–18, 2025. We look forward to speaking with you, and please do not hesitate to contact me with any questions.

744406.2

EXHIBIT 3
Page 19

MILLER BARONDESS, LLP

Megan Pierce
July 11, 2025
Page 4

                                        Sincerely,

                                        Jason H. Tokoro

JHT:bmr

cc:    Steven Art (via Email *Only* - steve@loevy.com)
        Anand Swaminathan (via Email *Only* - anand@loevy.com)
        Justin Hill (via Email *Only* - hill@loevy.com)
        Grayson Clary (via Email *Only* - gclary@rcfp.org)
        Michael D. Seplow (via Email *Only* - mseplow@sshhzlaw.com)
        Paul Hoffman (via Email *Only* - hoffpaul@aol.com)

744406.2

EXHIBIT 3
Page 20