**Steven Art**, IL Bar: 6302319*
**Anand Swaminathan**, IL Bar: 6305088*
**Justin Hill**, IL Bar: 6342031*
steve@loevy.com
anand@loevy.com
hill@loevy.com
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

**Grayson Clary**, DC Bar: 1735810*
gclary@rcfp.org
REPORTERS COMMITTEE
 FOR FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
(202) 795-9300

*Admitted pro hac vice

**Michael D. Seplow** (SBN 150183)
**Paul Hoffman** (SBN 71244)
mseplow@sshhzlaw.com
hoffpaul@aol.com
SCHONBRUN SEPLOW HARRIS
 HOFFMAN & ZELDES LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Phone: (310) 396-0731

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MAYA LAU,<br><br>             *Plaintiff*,<br><br>      v.<br><br>COUNTY OF LOS ANGELES; ALEX VILLANUEVA; MARK LLIENFELD; and TIM MURAKAMI<br><br>             *Defendants*. | Case No. 2:25-cv-04766-SPG-BFM<br><br>**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>[*Filed Concurrently with Proposed Order*]<br><br>Date:  September 17, 2025<br><br>Time:  1:30PM<br><br>Judge:  Hon. Sherilyn Peace Garnett |

---

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................ii

SUMMARY OF ARGUMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................. 3

ARGUMENT ..................................................................................................... 5

I.     Ms. Lau's complaint adequately alleges that the County's retaliation against her lawful reporting on LASD violated the First Amendment. ......................... 5

     A.     Even standing alone, a retaliatory criminal investigation would chill an ordinary person from exercising their First Amendment rights. ....... 6

     B.     The County went above and beyond conducting a retaliatory criminal investigation by referring Ms. Lau for prosecution. ................................ 13

II.    Ms. Lau's complaint adequately alleges that County officials acted under color of state law when they abused their official powers to punish her. ...... 15

III.   Ms. Lau adequately pleaded her conspiracy claim. ............................................. 16

IV.   The Individual Defendants are not entitled to qualified immunity. ................. 16

V.     Ms. Lau's complaint adequately alleges that the County's retaliation for her reporting caused her cognizable injury that is redressable by damages. ........ 20

VI.   Ms. Lau's complaint adequately alleges that the Individual Defendants are liable in their personal capacities for retaliating against her reporting. .......... 23

CONCLUSION .............................................................................................. 25

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF AUTHORITIES

## Cases

*Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140 (N.D. Cal. 2023) ............................ 22

*Ashker v. California Dep't of Corrections*, 112 F.3d 392 (9th Cir. 1997) .................. 24

*Az. Students Assn' v. Az. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016) .................... 12

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ............................................ *passim*

*Blair v. Bethel School Dist.*, 608 F.3d 540 (9th Cir. 2010) ................................ 5, 6, 11

*Brannian v. City of San Diego*, 364 F. Supp. 2d 1187 (S.D. Cal. 2005) .................... 21

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ............................................................ 1, 12

*Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001) ........................................... 1

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) ................................................... 9, 14

*Carey v. Piphus*, 435 U.S. 247 (1978) ........................................................................ 3

*Carlson v. County of Los Angeles*, 2016 WL 1152183 (C.D. Cal. Jan. 8, 2016) ........ 10

*Colonies Partners LP v. County of San Bernardino*, No. 18-cv-420, 2020 WL 5102160 (C.D. Cal. July 28, 2020) ................................................................... 9, 18

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) ........................................ 5, 9, 17, 18

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) ......................................... 6, 7

*Davis v. Astrue*, 874 F. Supp. 2d 856 (N.D. Cal. 2012) ............................................ 22

*Denney v. Drug Enforcement Admin.*, 508 F. Supp. 2d 815 (E.D. Cal. 2007) ............. 9

*Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) .............. 17

*Estate of Saunders v. C.I.R.*, 745 F.3d 953 (9th Cir. 2014) ...................................... 15

*Gallagher v. City of Winlock*, 287 F. App'x 568 (9th Cir. 2008) .............................. 16

*Garcia v. Montgomery County*, 145 F. Supp. 3d 492 (D. Md. 2015) .......................... 7

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) .............................................. 9

*Gomez v. County of Los Angeles*, 314 F. App'x 928 (9th Cir. 2009) .................. *passim*

*Hafer v. Melo*, 502 U.S. 21 (1991) ..................................................................... 23, 24

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................................. 19

*Hayes v. Idaho Correctional Ctr.*, 849 F.3d 1204 (9th Cir. 2017) .................. 2, 20, 23

*Hazle v. Crofoot*, 727 F.3d 983 (9th Cir. 2013) ................................................... 3, 21

*Hernandez v. Cook County Sheriff's Office*, No. 07-c-855, 2017 WL 4535982 (N.D. Ill. Sept. 5, 2017) ................................................................................................ 10

*Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992) ........................................... 6, 11

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) .................................................. 15

*Keates v. Kolle*, 883 F.3d 1228 (9th Cir. 2018) .............................................. 16, 18

*Kennedy v. Warren*, 66 F.4th 1199 (9th Cir. 2023) ........................................... 3, 13

*Kentucky v. Graham*, 473 U.S. 159 (1985) ........................................................... 24

*Krottner v. Starbucks Corp.*, 406 Fed. App'x 129 (9th Cir. 2010) ...................... 22

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ............................ 3, 22

*Leigh v. Salazar*, 677 F.3d 802 (9th Cir. 2012) ...................................................... 3

*Lincoln v. Maketa*, 880 F.3d 533 (10th Cir. 2018) ............................................... 11

*Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018) .......................................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 23

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) ................................................... 15

*Media Matters for Am. v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025) .................. 7, 10

*Medoff v. Minka Lighting, LLC*, 2023 WL 4291973 (May 8, 2023) ................ 22, 23

*Mills v. Alabama*, 384 U.S. 214 (1966) ................................................................. 18

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838 (9th Cir. 2002) ........ 14

*Moore v. Garnand*, 83 F.4th 743 (9th Cir. 2023) ............................................... 8, 17

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016) ........................................ *passim*

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ................................................. 1, 12

*Pendleton v. St. Louis County*, 178 F.3d 1067 (8th Cir. 1999) ............................. 10

*Price v. Akaka*, 928 F.2d 824 (9th Cir. 1990) ...................................................... 24

*Quraishi v. St. Charles Cnty.*, 986 F.3d 831 (8th Cir. 2021) ................................ 18

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005) .......................................... 14, 19

*Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990) .................................... 6

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ....................................................... 21

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) .................... 14, 19

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) .............................. 14, 19

iii

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)...........................2, 14, 19

*Speiser v. Randall*, 357 U.S. 513 (1958)........................................................9

*Sterner v. San Diego Police Dep't*, No. 08-cv-1407, 2009 WL 160921 (S.D. Cal. Jan. 22, 2009) ................................................................................*passim*

*Stringer v. County of Bucks*, 141 F.4th 76 (3d Cir. 2025)...................................16, 17

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009) ..............3, 23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................20, 21, 22

*Udd v. City of Phoenix*, No. 18-cv-01616, 2020 WL 1536326 (D. Az. Mar. 31, 2020) ................................................................................................9

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989) .............................................17

*United States v. Jones*, 565 U.S. 400 (2012).............................................................6

*United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007) .........................................*passim*

*United States v. Trayer*, 898 F.2d 805 (D.C. Cir. 1990) ............................................10

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ................................20, 21

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)..........................................................18

*Wong v. Jing*, 189 Cal. App. 4th 1354 (2010)..........................................................22

*Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000) ................................11, 13

*Zuurveen v. Los Angeles Cnty. Dep't of Health Svcs.*, 2022 WL 14966244 (Sept. 28, 2022) ........................................................................................24

## Other Authorities

Appellee's Answering Br., *Moore v. Garnand*, No. 22-16236, 2023 WL 2167183 (9th Cir. Feb. 15, 2023).....................................................................................8

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## SUMMARY OF ARGUMENT

Under the First Amendment, few principles should be clearer than the rule that "[o]fficial harassment of the press" violates the Constitution. *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972). In this case, Alex Villanueva, Tim Murakami, and Mark Lillienfeld ("the Individual Defendants") used the official powers of the Los Angeles County Sheriff's Department to pursue a baseless and retaliatory criminal investigation of Plaintiff Maya Lau—then a reporter for the *Los Angeles Times*—because she lawfully reported information of obvious public concern about deputy misconduct. *See* Dkt. 30 ¶¶ 3–17. With full knowledge that Ms. Lau had done nothing wrong, the Defendants then went on to refer Ms. Lau for prosecution. *See id.*

In response, the Defendants do not dispute that Ms. Lau adequately alleges that her reporting was "constitutionally protected activity," *O'Brien v. Welty*, 818 F.3d 920, 932–33 (9th Cir. 2016) (internal citation omitted); do not dispute that Ms. Lau adequately alleges that the Individual Defendants' animus toward her reporting "was a substantial or motivating factor" in the decision to investigate her and refer her for criminal prosecution, *id.*; and do not dispute that the County would be liable for the Individual Defendants' alleged misconduct, because a California sheriff "acts as a final policymaker for the County when investigating crime," *Brewster v. Shasta County*, 275 F.3d 803, 812 (9th Cir. 2001). Instead, the Defendants stake out the position that being criminally investigated and ultimately referred for prosecution would not "chill a person of ordinary firmness from continuing to engage in the protected activity," *O'Brien*, 818 F.3d at 932 (internal citation omitted), and that Ms. Lau suffered no harm from the Sheriff's Department's vindictive campaign.

Defendants are wrong. The identification of a speaker as the target of a formal criminal investigation, and their referral for prosecution, would each discourage an ordinary person from exercising their First Amendment rights. The Ninth Circuit has

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

made clear that "[w]hen evaluating executive branch investigations that threaten First Amendment rights, this court and others have required that the investigation serve a legitimate law enforcement interest" and that "the government must not investigate for the purpose of violating First Amendment rights." *United States v. Mayer*, 503 F.3d 740, 751–52 (9th Cir. 2007); *see also Sterner v. San Diego Police Dep't*, No. 08-cv-1407, 2009 WL 160921, at *3 (S.D. Cal. Jan. 22, 2009) (holding, in investigation of a doctor, that "surreptitious and retaliatory police investigations would chill the speech of even the most law-abiding physician" and rejecting bid to dismiss retaliatory investigation claim for "lack of actual damages")

But if the investigation standing alone did not suffice to chill a person of ordinary firmness, that Defendants referred Ms. Lau for prosecution is more than enough. "People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them" for exercising their First Amendment rights, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963), and as a result a "referral" for punishment "itself is chilling even if it does not result in a finding of responsibility or criminality," *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019); *see also Gomez v. Cnty. of Los Angeles*, 314 F. App'x 928, 930 (9th Cir. 2009) ("failed initiation of a criminal investigation" is an adverse action for retaliation claim). The Constitution does not reward the Sheriff's Department for pursuing a prosecution so baseless that no prosecutor would touch it.

The Defendants' objection to Ms. Lau's standing to seek redress fares no better. Repeating substantially the same position, the County maintains that Ms. Lau suffered no cognizable injury. To start with, a plaintiff is not "required to show any actual injury beyond the free speech violation itself to state a constitutional claim." *Hayes v. Idaho Correctional Ctr.*, 849 F.3d 1204, 1212 (9th Cir. 2017) (internal citation omitted). But regardless, Ms. Lau also adequately alleged that she suffered emotional, dignitary, and privacy harms from Defendants' misconduct, from "the

unique stigma associated with having a government official label [her] a law breaker," *Kennedy v. Warren*, 66 F.4th 1199, 1206 (9th Cir. 2023), to "anxiety and stress," *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010).

Defendants might prefer more detail, but even at trial, "[c]ompensatory damages" in a civil-rights action "may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086 (9th Cir. 2009) (internal citation omitted).  Here, it should be easy enough to infer why the threat of being investigated and prosecuted for lawful journalism would cause distress.  And even if that were not the case, the Ninth Circuit has explained that nominal damages are available under § 1983 to redress a past violation of the First Amendment "in cases in which the plaintiff is not entitled to compensatory damages, such as cases in which no actual injury is incurred." *Hazle v. Crofoot*, 727 F.3d 983, 991 n.6 (9th Cir. 2013) (citing *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)); *see also Sterner*, 2009 WL 160921, *3 (same in claim for retaliatory investigation).  Defendants cannot downplay Ms. Lau's injuries to avoid confronting her allegations on the merits.

At base, much as Defendants might prefer to ignore the harm, the Sheriff's Department's abuse of the criminal-justice process to punish a journalist for her lawful reporting was an attack on the first principles of the First Amendment.  "The free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).  Ms. Lau's complaint more than adequately alleges her entitlement to redress for the Defendants' violation of her constitutional rights; their motions should be denied.

## FACTUAL BACKGROUND

In December 2017, Plaintiff Maya Lau and two colleagues at the *Los Angeles Times* published an article discussing a "Brady List" that was maintained by the Los

---

3

Angeles County Sheriff's Department (LASD).  Dkt. 30 ¶ 4.  The LASD's Brady List catalogued roughly 300 LASD deputies who had histories of dishonesty or other misconduct that made them open to impeachment as trial witnesses.  *Id.* ¶ 5.  Ms. Lau's article highlighted several officers included in the Brady List, and explained that the LASD's Brady List had been withheld from prosecutors and defendants' counsel.  *Id.* ¶¶ 8, 33–37, 40.  Ms. Lau's reporting helped spark new legislation that required officer personnel files to be open to public review.  *Id.* ¶¶ 43–44.

LASD leadership was furious that its Brady List had leaked.  *Id.* ¶ 11.  Under then-Sheriff Jim McDonnell, an initial investigation of the disclosure found no evidence to suggest Ms. Lau had broken the law.  *Id.* ¶¶ 48–50.  Despite that finding, newly elected Sheriff Alex Villanueva opened a *new* criminal investigation into Ms. Lau a year later.  *Id.* ¶¶ 51–53.  He instructed the Civil Rights and Public Integrity Detail—a group of officers Villanueva used to target individuals who criticized him or the LASD—to investigate Ms. Lau.  *Id.* ¶¶ 52–56, 65–82.  Detective Mark Lillienfeld led the investigation.  *Id.* ¶ 57.  Again, it turned up no evidence suggesting that Ms. Lau had committed any crime.  *Id.* ¶ 58.  However, Undersheriff Tim Murakami (by delegation from Sheriff Villanueva) referred Ms. Lau for prosecution.  *Id.* ¶¶ 60–61.  He claimed that Ms. Lau had engaged in conspiracy, theft of government property, unlawful access of a computer, burglary, and receiving stolen property.  *Id.* ¶ 62.  The California Attorney General declined to prosecute.  *Id.* ¶ 64.

Ms. Lau sued Alex Villanueva, Mark Lillienfeld, and Tim Murakami for retaliating against her in violation of the First Amendment.  *See generally* Dkt. 30. Ms. Lau alleged that even if the Brady List had been leaked, she did not commit a crime by publishing it.  *Id.* ¶¶ 12, 14.  The retaliatory investigation was based solely upon her reporting, and under *Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001), journalists cannot be held criminally liable for reporting on information that may have been illegally obtained by a source.  *Id.* ¶¶ 1, 12, 14.  Ms. Lau also sued the

County of Los Angeles for maintaining a policy and practice of retaliating against

individuals who used their public positions to criticize Sheriff Villanueva and LASD.

The Individual Defendants and the County filed Motions to Dismiss, Dkts. 31-1 & 32-1, to which this Combined Brief in Opposition responds.

## ARGUMENT

I. **Ms. Lau's complaint adequately alleges that the County's retaliation against her lawful reporting on LASD violated the First Amendment.**

A plaintiff states a claim for First Amendment retaliation by alleging that "(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Defendants challenge only the second prong, maintaining that neither launching a criminal investigation nor referring a journalist for prosecution is chilling enough to "stifle someone from speaking out." *Id.* at 544. But the Ninth Circuit has made clear that "'investigating' on the basis of speech of protected by the First Amendment" can, in fact, violate the Constitution, *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002) (affirming injunction that prohibited "initiat[ing] an investigation of a physician solely on the basis of" speech protected by the First Amendment, "unless the government in good faith believes that it has substantial evidence of criminal conduct"); *see also Mayer*, 503 F.3d at 752 (noting that, "to avoid running afoul of the First Amendment, the government must not investigate for the purpose of violating First Amendment rights"). And if the formal investigation standing alone weren't danger enough, the referral for prosecution would be, because "false accusations of criminal activity" that "intimat[e] that punishment would imminently follow" chill speech. *Mulligan v. Nichols*, 835 F.3d 983, 990 (9th Cir. 2016).

Ultimately, Defendants had no reason to believe that Ms. Lau committed any crime, yet they did everything within their power to punish her because they did not like the content of her reporting.  The threat of indefinite, unbounded criminal investigations would discourage any ordinary journalist from reporting on the LASD (and would discourage any sources from speaking to them further). The fact that prosecutors did not accept the Department's referral against Ms. Lau does not make the threat any less chilling.  *See Gomez*, 314 F. App'x at 930.

**A.    Even standing alone, a retaliatory criminal investigation would chill an ordinary person from exercising their First Amendment rights.**

As the Ninth Circuit has often emphasized, "the precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases," *Coszalter v. City of Salem*, 320 F.3d 968, 974–75 (9th Cir. 2003), because the defendant's misconduct "need not be severe and it need not be of a certain kind," *id.*  To take an extreme case, the Supreme Court has observed that the Constitution would prohibit "even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights." *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 n.8 (1990)).  The test screens out only action "so insignificant that it does not deter the exercise of First Amendment rights." *Coszalter*, 320 F.3d at 975.[1]

The opening of a formal criminal investigation would deter an ordinary person from speaking or gathering news about the LASD because "[a]wareness that the government may be watching chills associational and expressive freedoms." *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring).  On learning that an investigation has been opened, any reasonable person would fear that they

---

[1]    *Coszalter* was a public-employee retaliation case in particular, but the Ninth Circuit applies substantially the same First Amendment framework to cases involving a "government worker who loses his job" that it does to those involving "citizens who are allegedly targeted by law enforcement" like Ms. Lau.  *Blair*, 608 F.3d at 544.

might now be subjected to the wide range of intrusive investigative techniques that police can deploy without further authorization—that they might be tailed from place to place, or that a stake-out of their home and office might be in the works. *See Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997) (plaintiff who was followed and photographed in public for retaliatory purposes stated First Amendment claim, even though "the Government's surveillance of individuals in public places does not, by itself, implicate the Constitution"); *see also Garcia v. Montgomery Cnty.*, 145 F. Supp. 3d 492, 515 (D. Md. 2015) (journalist who noticed officers stationed outside his home suffered adverse action for purposes of retaliation claim). Any reasonable journalist would flinch at the prospect of being singled out for that sort of scrutiny. *Media Matters for Am. v. Paxton*, 138 F.4th 563, 580 (D.C. Cir. 2025) ("[B]ad faith use of investigative techniques can abridge journalists' First Amendment rights.").

Moreover, a journalist's professional career would be threatened by the opening of a retaliatory investigation. A journalist's success often depends on the willingness of sources to speak candidly with her, and confidential sources would be deterred from providing information if they believed a journalist was being surveilled by police. *See Reps. Comm. for Freedom of the Press v. AT&T*, 593 F.2d 1030, 1064 (D.C. Cir. 1978) ("Unlike good faith investigation to which all citizens are subject, official harassment places a special burden on information-gathering, for in such cases the ultimate, though tacit, design is to obstruct rather than investigate[.]"). A reasonable journalist might refrain, too, from publishing on topics likely to trigger law enforcement scrutiny in order to protect her relationships with confidential sources. *See Media Matters for Am.*, 138 F.4th at 581 (media organization "pared back its reporting[] and declined to pursue follow-up" in light of retaliatory investigation). As a result, "instigating unwarranted criminal investigations" chills the exercise of First Amendment rights by journalists just as much as it would for any ordinary member of the public—if not even more so. *Coszalter*, 320 F.3d at 975.

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Ninth Circuit precedent reinforces this conclusion.  In *Conant v. Walters*, for instance, the court affirmed an injunction that imposed a "bar against 'investigating' on the basis of speech protected by the First Amendment"—including the threshold step of "initiating any investigation" solely on the basis of protected speech—without a good-faith basis to suspect criminal conduct.  309 F.3d at 636 (internal citation omitted).  In *United States v. Mayer*, dealing with an undercover investigation that would not have required any suspicion under the *Fourth* Amendment, the Circuit nevertheless emphasized that "the government must not investigate for the purpose of violating First Amendment rights" and again required a good-faith investigative purpose.  503 F.3d at 752.  And in *Gomez v. County of Los Angeles*, the court flatly "disagree[d]" with the County that the "failed initiation of a criminal investigation" is insufficiently adverse to chill a person of ordinary firmness.  314 F. App'x at 930.

Arguing otherwise, the County in a footnote leans on *Moore v. Garnand*, 83 F.4th 743 (9th Cir. 2023), where the Ninth Circuit found in the qualified-immunity context that a plaintiff failed to carry his burden to identify "caselaw that clearly established that a retaliatory investigation per se violates the First Amendment," *id.* at 752.  *Moore* has little precedential value because the plaintiff there simply never cited to *Mayer* or *Conant*, both of which establish as much, *see* Appellee's Answering Br., *Moore v. Garnand*, No. 22-16236, 2023 WL 2167183, at *40–41 (9th Cir. Feb. 15, 2023), and so the panel's holding in that case was limited to "Plaintiffs' fail[ure] to meet their burden" to identify the relevant caselaw, *Moore*, 83 F.4th at 753.  Regardless, as the County agrees, *Moore* did not purport to make a holding on the underlying First Amendment merits question.  As a result, *Moore* did not—and could not—overrule the Circuit's prior guidance that "the government must not investigate for the purpose of violating First Amendment rights," *Mayer*, 503 F.3d at 752, and that even the threshold step of "initiat[ing] an investigation" solely on the basis of

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

1    protected speech is unconstitutional, "unless the government in good faith believes

2    that it has substantial evidence of criminal conduct," *Conant*, 309 F.3d at 636.

3    Those precedents square with common sense.  The Supreme Court has

4    emphasized that the First Amendment prohibits not just "formal legal sanctions" for

5    speaking out but also the "threat of invoking legal sanctions and other means of

6    coercion, persuasion, and intimidation."  *Bantam Books*, 372 U.S. at 67.  And even

7    before any further steps have been taken, learning that an investigation has been

8    opened "intimate[s] that punishment [will] imminently follow."  *Mulligan*, 835 F.3d

9    at 990; *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("the mere *threat* of

10   harm can be an adverse action" in the retaliation context "regardless of whether it is

11   carried out because the threat itself can have a chilling effect").  Because "[t]he man

12   who knows that he must bring forth proof and persuade another of the lawfulness of

13   his conduct necessarily must steer far wider of the unlawful zone," *Speiser v.

14   Randall*, 357 U.S. 513, 526 (1958), it takes little more than a "gratuitous show of

15   uninvited law enforcement interest" to communicate that a plaintiff would be better

16   off not antagonizing the police, *Garcia*, 145 F. Supp. 3d at 515 (seeing officers near

17   journalist's home sufficiently adverse); *Gibson v. United States*, 781 F.2d 1334, 1338

18   (9th Cir. 1986) (helicopter flights overhead sufficiently adverse).  In plain language:

19   An ordinary person who learned that they were under criminal investigation because

20   they had published information critical of LASD would be reluctant to do so again.

21   Following those cues, district courts in this Circuit, too, have found that

22   "retaliatory police investigations" are actionable under § 1983.  *Sterner*, 2009 WL

23   160921, at *3; *Colonies Partners LP v. County of San Bernardino*, No. 18-cv-420,

24   2020 WL 5102160, at *22 (C.D. Cal. July 28, 2020); *Denney v. Drug Enforcement

25   Admin.*, 508 F. Supp. 2d 815, 830 (E.D. Cal. 2007); *see also Udd v. City of Phoenix*,

26   No. 18-cv-01616, 2020 WL 1536326, at *17 (D. Az. Mar. 31, 2020) (same under

27   Title VII); *Carlson v. County of Los Angeles*, 2016 WL 11522183, at *5 (C.D. Cal.

28

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Jan. 8, 2016) (same as to retaliatory child-welfare investigation).  And were it
otherwise, it would take "little imagination to envision police abuse of investigative
procedures to affirmatively chill speech."  *Sterner*, 2009 WL 160921, at *3.

In arguing that LASD should have "a license to retaliate through investigative
procedures," *id.*, Defendants rely entirely on out-of-circuit cases.  True enough:
There is an unresolved circuit split on the question, and Ninth Circuit precedent
places it on one side.  *Hernandez v. Cook County Sheriff's Office*, No. 07-cv-855,
2017 WL 4535982, at *7 (N.D. Ill. Sept. 25, 2017) (identifying the Ninth Circuit as
one among "a number of other circuit courts [that] have found that a retaliatory
investigation can violate the First Amendment").  And the Ninth Circuit's view on the
issue hardly stands alone.  *See, e.g.*, *Media Matters*, 138 F.4th at 580; *Pendleton v. St.
Louis County*, 178 F.3d 1007, 1010–11 (8th Cir. 1999) (defendants who "fabricated a
criminal investigation" in retaliation for plaintiff's speech "could not have reasonably
believed that their actions comported with clearly established law"); *Anderson*, 125
F.3d at 159–60, 163 (finding that a "surveillance operation" was an adverse action).[2]

For that matter, many of Defendants' cited cases do not support the proposition
for which Defendants offer them because they deal with different constitutional
provisions.  For instance, *United States v. Trayer* is unhelpful because it involves the
Fourth Amendment, and the legal standard for an unlawful "search" is entirely
different than the standard for an "adverse action" in a First Amendment retaliation
claim.  *Compare Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990) (under the Fourth
Amendment, "there is no constitutional right to be free of investigation"), *with Media*

---

[2]    The Justice Department likewise prohibits federal law enforcement officers
from opening even the most preliminary of investigations "based solely on the
exercise of First Amendment rights."  Fed. Bureau of Investigation, Domestic
Investigations & Ops. Guide § 5.5(b) (Feb. 27, 2024).  And Congress has imposed the
same limit by statute on many of the federal government's investigative authorities.
*See* 18 U.S.C. § 2709(b)(1) (to obtain certain business records, government must
certify that investigation is "not conducted solely on the basis of activities protected
by the first amendment); 50 U.S.C. § 1805(a)(2)(A) (prohibiting certain electronic
surveillance "solely upon the basis of activities protected by the first amendment").

*Matters*, 138 F.4th at 580 (under the First Amendment, "allegation that [plaintiffs] are targets of a retaliatory government investigation is a claim regarding concrete harm"). Similarly, *Aponte v. Calderon* is inapposite because it asks whether there is a right under the *Due Process Clause* to be free from criminal investigations. 284 F.3d 184, 191–93 (1st Cir. 2002). But the First Amendment prohibits retaliatory adverse actions even when no liberty interest would be at stake for purposes of due process. *See Hyland*, 972 F.2d at 1136, 1141 (plaintiff stated claim under First Amendment, but not Due Process Clause, for retaliatory revocation of volunteer position).

Other cases cited by Defendants address only a given plaintiff's failure to carry their burden on qualified immunity, not the merits of the First Amendment issue. *Compare, e.g.*, *Lincoln v. Maketa*, 880 F.3d 533, 540–41 (10th Cir. 2018) (granting qualified immunity), *with Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) ("[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." (internal citation omitted)).

None of the Defendants' proffered support, then, justifies departing from the Ninth Circuit's own guidance. Ultimately, Defendants' argument rests upon out-of-circuit cases that run contrary to *Conant* and *Mayer*. And the Defendants' authorities are unpersuasive on their own terms, too, because they fail to fit the assertion that a retaliatory investigation is not actionable into the governing test: Would learning that the Sheriff's Department had initiated a criminal investigation of her journalism "chill a person of ordinary firmness" from reporting with the same enthusiasm on the Department? *Blair*, 608 F.3d at 543. That the Defendants answer 'no' blinks reality.

Finally, bundled with the County's insistence that a criminal investigation is not adverse seems to be the argument that covert retaliation cannot violate the First Amendment if a plaintiff learns about it after the fact. Dkt. 31-1 at 9. The County never explains why the timing would matter to whether its misconduct ultimately

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

chills speech; an ordinary person who learns that they were targeted for a retaliatory investigation in the past would fear that speaking again will prompt renewed law enforcement scrutiny, much as the investigation in Ms. Lau's case had already been closed once before Sheriff Villanueva reopened it on a retaliatory basis. *See* Dkt. 30 ¶¶ 52–56. But in any event, the Ninth Circuit has already foreclosed the County's position. *See Az. Students' Ass'n v. Az. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) ("covert surveillance" is an adverse action that can chill speech); *see also Sterner*, 2009 WL 160921, *3 ("surreptitious" investigation is an adverse action).

And for good reason. Whether an action is adverse does not turn on when a particular plaintiff learned about it because the inquiry whether misconduct "would chill a person of ordinary firmness'" is "generic and objective," *O'Brien*, 818 F.3d at 933 (internal citation omitted); whether Ms. Lau herself "was, or would have been, chilled" is irrelevant, *id.*, and thus so is the question of how long the County concealed its misconduct from her. Just as importantly, the County's position would have startling implications. On its view, even a journalist baselessly wiretapped by the Department would have no remedy after secret and retaliatory surveillance ends. Even the Individual Defendants do not join that police-state vision. *See* Dkt. 32-1 at 5 n.1 (conceding that a "secret warrantless wiretap" would be actionable ).

However dressed up, the County's position in substance is that "official harassment of the press" is just the price of doing business as a reporter, *Branzburg*, 408 U.S. at 707, and that the ordinary journalist should be hardy enough to brush off the prospect that they will be targeted for criminal investigation for reporting that the Sheriff's Department dislikes. That is not the law. Because the Sheriff's Department violated the constitutional command that "the government must not investigate for the purpose of violating First Amendment rights," *Mayer*, 503 F.3d at 752, Ms. Lau states a plausible claim based on the opening of a retaliatory criminal investigation.

**B.**     **The County went above and beyond conducting a retaliatory criminal investigation by referring Ms. Lau for prosecution.**

Even if an investigation alone could not give rise to retaliation liability, much of the County's motion is misdirected because Ms. Lau alleged more than an investigation:  The Sheriff's Department took the further step of referring her for criminal prosecution, knowing full well that no cause (let alone probable cause) existed to do so.  Dkt. 30 ¶¶ 14, 54–56, 60–64.  The "threat of invoking legal sanctions" is a classic adverse action for purposes of First Amendment retaliation, *Mulligan*, 835 F.3d at 989 n.5 (internal citation omitted), and "false accusations of criminal activity" fit the bill when they "intimate[] that punishment [will] imminently follow," *id.* at 990; *Worrell*, 219 F.3d at 1212 ("threatened prosecution" is an adverse action).  At the risk of stating the obvious, any reasonable individual who learns they have been referred for criminal prosecution would worry that punishment will follow. *See Kennedy*, 66 F.4th at 1210 (noting that it "would have been foolish" for a speaker to ignore the views of a commission with the power to "recommend prosecutions").

In arguing otherwise, the County makes much of the fact that no prosecutor would act on the referral—proposing a topsy-turvy standard in which referrals with enough superficial merit to prompt charges are actionable, but entirely baseless referrals are not.  The suggestion makes little sense.  In *Bantam Books*, too, "no one [had] been prosecuted" because the commission accused of making threats against protected speech had no "power to apply formal legal sanctions" without the independent action of a prosecutor.  372 U.S. at 66–67.  But the Supreme Court nevertheless made clear that "the threat of invoking legal sanctions" was harm enough to violate the First Amendment, *id.* at 67, pointing to the example of threats made not just by prosecutors but "on the part of chiefs of police," *id.* at 67 n.8.

Following *Bantam Books*, the federal courts of appeal have consistently found that the prospect of "referral" for punishment "itself is chilling even if it does not

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

result in a finding of responsibility or criminality," *Speech First, Inc.*, 939 F.3d at
765, even in contexts much less fraught than the risk of criminal prosecution, *accord
Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020); *Speech First, Inc. v.
Cartwright*, 32 F.4th 1110, 1122 (11th Cir. 2022); *see also Gomez*, 314 F. App'x at
930 (even "failed initiation of a criminal investigation" is an adverse action for
retaliation claim).  After all, the good luck that the LASD struggled to find a willing
prosecutor would not relieve an ordinary person's concern that the LASD might try
again.  And as a result, as the Ninth Circuit has recognized, "the mere *threat* of harm
can be an adverse action" in the retaliation context "regardless of whether it is carried
out because the threat itself can have a chilling effect."  *Brodheim*, 584 F.3d 1270;
*see also Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 848 (9th Cir.
2002) (finding, under an analogous retaliation test for the False Claims Act, that
threats of employment consequences were "reasonably likely to deter employees
from engaging" in protected activity even though the threats were not carried out).

    Finally, it bears underlining that it would offer Defendants a perverse windfall
to excuse the retaliatory referral because of the independent acts of prosecutors who
found it meritless.  Liability under § 1983 looks to an official's conduct "*at the time
they decided to act*."  *Rhodes v. Robinson*, 408 F.3d 559, 570 (9th Cir. 2005).  Once
the referral was made, the Individual Defendants had done everything within their
power to achieve Ms. Lau's prosecution.  That other officials would not collaborate
in the campaign did nothing to dilute the message any ordinary person would have
received on learning of the referral:  In the County of Los Angeles, journalists surface
unflattering information about the Sheriff's Department under threat that the
Department will pursue charges.  Because "people do not lightly disregard public
officers' thinly veiled threats to institute criminal proceedings against them," *Bantam
Books,* 372 U.S. at 68, Ms. Lau has adequately alleged that referring her for
prosecution in retaliation for her reporting violated her First Amendment rights.

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

## II.    Ms. Lau's complaint adequately alleges that County officials acted under color of state law when they abused their official powers to punish her.

In a footnote, the County suggests that "to the extent Plaintiff argues Individual Defendants' actions were taken to vindictively target Villanueva's perceived opponents, such actions were not conduct under color of state law."  Dkt. 31-1 at 9 n.3.  "Arguments raised only in footnotes, or only on reply, are generally deemed waived," *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014), and this Court should decline to consider an argument for which the County offered no reasoning.  (For one, Ms. Lau is prejudiced in responding because it is difficult to discern the argument's basis; the pincite offered in the County's unexplained citation points only to a generic statement that § 1983 requires a deprivation of rights under color of law.)  But in the interest of avoiding any doubt, the argument is meritless.

"It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.  Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).  A California sheriff's responsibilities plainly include "the function of conducting criminal investigations," *Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014), and it should go without saying that a formal referral for prosecution—made on Sheriff's Department letterhead, not Sheriff Villanueva's personal stationery—is not a citizen's tip.  The fact that the Individual Defendants had a retaliatory motive for attempting to punish Ms. Lau, for its part, does not take their conduct outside § 1983's scope, or else there would be no such thing as a First Amendment retaliation claim under § 1983.  *Cf. Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (allegations of an "official municipality policy of intimidation," pursued "in retaliation for . . . criticisms of city officials" states a First Amendment claim under § 1983).  And in any event, Ms. Lau's complaint does not allege that the

crusade was motivated by *personal* animus; it alleges that the County's decisionmakers had a policy of retaliating against individuals who "report unfavorable information about *LASD*."  Dkt. 30 ¶¶ 110 (emphasis added); *see also id.* ¶¶ 52, 65.  The County cannot avoid liability for Defendants' abuse of their official power to retaliate against a journalist for reporting about the County that they dislike.

## III.   Ms. Lau adequately pleaded her conspiracy claim.

The Individual Defendants also resist the conclusion that Ms. Lau plausibly alleged a conspiracy for purposes of § 1983.  As the Individual Defendants make clear, this argument is derivative of their belief that they never violated the First Amendment, *see* Dkt. 32-1 at 11, but as discussed above, Ms. Lau adequately pleaded that the Individual Defendants violated the First Amendment by retaliating against her for engaging in protected activity.  Moreover, Ms. Lau plausibly alleged that the Defendants conspired to violate the Constitution by reaching an unlawful agreement amongst themselves.  *See* Dkt. 30 ¶¶ 97–104 (allegations describing the work of the Civil Rights and Public Integrity Detail responsible for the investigation and referral).

## IV.   The Individual Defendants are not entitled to qualified immunity.

Finally, the Individual Defendants mount a qualified-immunity defense.[3]  The County did not raise this argument because "[m]unicipalities cannot claim qualified immunity."  *Gallagher v. City of Winlock*, 287 F. App'x 568, 577 (9th Cir. 2008).

Granting qualified immunity on the pleadings alone is strongly disfavored, because "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" on an undeveloped record.  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018); *accord Stringer v. County of Bucks*, 141 F.4th 76, 87 & n.8 (3d Cir. 2025) (emphasizing that it is "generally inappropriate

---

[3]   The Individual Defendants also briefly mention that they believe "corresponding state law immunities" protect them from liability, but never specify which state law immunities would apply.  Dkt. 32-1 at 11.  Those arguments are therefore waived.  Regardless, state law immunities cannot be used to thwart federal constitutional claims.  *See Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996).

for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified

immunity" and collecting cases (citation omitted)).  It bears underlining, in that vein,

that *Moore v. Garnand*—on which the Individual Defendants principally rely—was

decided at summary judgment, only after a degree of discovery about "[t]he scope

and manner of the investigation" to which the panel pegged its analysis.  83 F.4th at

752 (citation omitted) (emphasis omitted).  Here too, if "Defendants' immunity

defense cannot be resolved without some discovery," the proper course is to deny it

and defer the question to summary judgment.  *Stringer*, 141 F.4th at 89.

Regardless, the Individual Defendants' argument fails on its own terms.

Government officials are not entitled to qualified immunity if they (1) violate a

plaintiff's constitutional rights, and (2) those rights are clearly established at the time

of the misconduct.  *See Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790,

802 (9th Cir. 2025) (en banc).  Ms. Lau plausibly alleged the first prong of this

analysis for all the reasons stated above.  As for the second prong, it was clearly

established in 2018 that police officers could not open an investigation "for the

purpose of abridging first amendment freedoms," *Mayer*, 503 F.3d at 751; *see also*

*Conant*, 309 F.3d at 636, and that they could not use "false accusations of criminal

activity" accompanied by the "threat of invoking legal sanctions" to suppress

protected speech, *Mulligan*, 835 F.3d at 989–990 & n.5.[4]

For decades, officers within the Ninth Circuit have been on notice that

investigations must be conducted "in good faith." *Mayer*, 503 F.3d at 751 (citing

*United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir. 1989) (superseded by statute on

other grounds)).  An investigation is not conducted in good faith if it is opened "for

the purpose of abridging first amendment freedoms," *id.*, and *Conant* made clear that

---

[4]     As with the merits, the Individual Defendants' qualified-immunity argument is
limited to whether their actions were adverse enough to chill a person of ordinary
firmness; they do not raise any argument that a reasonable official would not have
known Ms. Lau's conduct as a journalist was protected by the First Amendment.

the same "good faith" requirement extends to the threshold step of "initiat[ing] an investigation," 309 F.3d at 636.  That is precisely the situation here:  Ms. Lau plausibly alleges that the Individual Defendants investigated her solely because she published an article discussing the LASD's Brady List, not because they suspected her of committing any crime. Dkt. 30 ¶¶ 14, 54–56, 59.  And it makes no difference that the Ninth Circuit articulated those rules in cases that did not involve journalists; if anything, the fact that "the press serves and was designed to serve as a powerful antidote to any abuse of power by governmental officials" makes the illegality of the Defendants' misconduct more obvious. *Mills v. Alabama*, 384 U.S. 214, 219 (1966); *see also Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 838–39 (8th Cir. 2021) (no prior case involving journalists in particular required to put officials on notice that retaliating against journalists violates the First Amendment). Any reasonable officer in 2018 would have recognized that opening a criminal investigation to punish a journalist for an unfavorable story would be unlawful. *See Sterner*, 2009 WL 160921, at *4 (denying qualified immunity for retaliatory investigation claim); *Colonies Partners LP*, 2020 WL 5102160, at *32 (same); *Gomez*, 314 F. App'x at 930 (denying immunity even for "failed initiation of a criminal investigation").

Finally, the fact that the Individual Defendants also referred Ms. Lau for prosecution makes the qualified-immunity analysis especially easy. *See Keates*, 883 F.3d at 1235 ("If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." (citation omitted)).  In addition to opening an investigation in bad faith, the Individual Defendants ultimately attempted to use legal sanctions to punish Ms. Lau for her reporting.  The Supreme Court settled in *Bantam Books* that "the threat of invoking legal sanctions" is, itself, sufficient to chill speech even where "no one has been prosecuted."  372 U.S. at 67; *see also White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (same); *Mulligan*, 835

F.3d at 990 ("false accusations of criminal activity" that "intimat[e] that punishment would imminently follow" violate the First Amendment).  And the overwhelming weight of persuasive authority in other federal courts of appeals confirms that a "referral" for punishment "itself is chilling even if it does not result in a finding of responsibility or criminality." *Speech First, Inc. v*, 939 F.3d at 765; *accord Speech First, Inc.*, 979 F.3d at 330; *Speech First, Inc.*, 32 F.4th at 1122.

That result makes sense.  There is no question, after all, that Defendants would be liable for retaliatory prosecution under clearly established law if charges against Ms. Lau had in fact been filed.  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). And because the qualified-immunity analysis looks only to whether Defendants' conduct "was unlawful *at the time they decided to act*," *Rhodes*, 408 F.3d at 570, the subsequent actions of the prosecutor are irrelevant to the analysis.  Defendants had already done as much as they personally could to violate Ms. Lau's rights.  *Cf. Thompson v. Clark*, 596 U.S. 36, 40 (2022) (recognizing malicious prosecution claim under the Fourth Amendment where police officer "filed a criminal complaint" but prosecution then "moved to dismiss the charges").  By attempting to peg their immunity defense to what happened *after* they made the retaliatory referral, "the officers would have qualified immunity turn *on the harm eventually caused* by an official's conduct.  But that puts the cart before the horse:  It shifts the focus of the qualified immunity inquiry from the time of the conduct to its aftermath and effect, and therefore would make immunity hinge upon *precisely* the kind of post hoc judgment that the doctrine is designed to avoid." *Rhodes*, 408 F.3d at 570.  Ninth Circuit law forecloses that gambit.  Any reasonable official in 2018 would have known that referring a journalist for criminal prosecution in retaliation for their reporting, with no valid basis for doing so, violates the First Amendment.

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

1    **V.    Ms. Lau's complaint adequately alleges that the County's retaliation for**

2        **her reporting caused her cognizable injury that is redressable by damages.**

3            Further downplaying the gravity of its effort to prosecute a journalist, the

4    County argues in the alternative that Ms. Lau has no standing to seek damages for its

5    officials' misconduct, either because the County has since changed its ways or

6    because Ms. Lau did not suffer enough harm.  The County is mistaken on both points.

7            The County's first argument misreads the Complaint: Ms. Lau seeks damages

8    for the past constitutional violations she suffered, not prospective relief from future

9    harm.  Dkt. 30 ¶ 86.  The County's claim that LASD does not *currently* have a

10   retaliatory policy—a factual claim that would be inappropriate to resolve in the

11   County's favor on a motion to dismiss in any event—is therefore irrelevant to Ms.

12   Lau's claim for relief for a *past* constitutional injury.  As the Supreme Court held in

13   *Uzuegbunam v. Preczewski*, damages (even nominal damages) provide effective

14   redress "where a plaintiff's claim is based on a completed violation of a legal right,"

15   including a past First Amendment injury whose scope may be challenging to

16   quantify.  592 U.S. 279, 293 (2021).  And as *Uzuegbunam* likewise held, Defendants'

17   purported change in policy does not moot her claim for relief for that past injury. *Id.*

18           In the alternative, the County claims that Plaintiff lacks standing because she

19   has not suffered a "cognizable harm."  Dkt. 31-1 at 11–12.  But Ms. Lau alleged a

20   cognizable injury several times over.  For one, Supreme Court precedent recognizes

21   that First Amendment violations are concrete harms without any additional showing

22   of tangible injury.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)

23   ("abridgment of free speech" is a concrete harm); *Hayes*, 849 F.3d at 1212 (a plaintiff

24   is not "required to show any actual injury beyond the free speech violation itself"

25   (citation omitted)); *see also Sterner*, 2009 WL 160921, at *3 (rejecting motion to

26   dismiss retaliatory investigation claim for purported "lack of actual damages").

27

28

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

The County seems to believe Ms. Lau should have said more about the *extent* of those damages, but Article III requires no such thing; there is no "amount-in-controversy requirement" for past constitutional injuries. *Uzuegbunam*, 592 U.S. at 802. On the contrary, under § 1983, a plaintiff is entitled to recover at least nominal damages for a past constitutional violation even in "cases in which no actual injury is incurred or can be proven." *Hazle*, 727 F.3d at 991 n.6; *see also, e.g.*, *Brannian v. City of San Diego*, 364 F. Supp. 2d 1187, 1194 (S.D. Cal. 2005) (even at summary judgment, "in this § 1983 case alleging a First Amendment violation, Plaintiffs clearly are *not* required to demonstrate actual damages in order to proceed on their claim for nominal damages"). Ms. Lau did, in fact, allege further damages as discussed below. But even if she hadn't, the County's motion to dismiss simply ignores Ms. Lau's claim for nominal damages for the past invasion of her rights. *See* Dkt. 30 ¶ 86. This Court can deny the motion on that ground alone.

In addition to her First Amendment injuries, Ms. Lau alleged that the County's retaliatory investigation and referral caused Ms. Lau the sort of dignitary, privacy, and emotional harms that have traditionally "provid[ed] a basis for lawsuits in American courts." *TransUnion LLC*, 594 U.S. at 425 (noting that reputational harms, disclosure of private information, and intrusion upon seclusion are concrete harms); *see also* Dkt. 30 ¶ 84 (alleging that Ms. Lau's "dignity and privacy" were infringed, and that she suffered emotional distress in the form of anxiety).

Defendants neglect to address the dignitary and privacy harms of their conduct, and have therefore waived any arguments related to those injuries, but each would independently provide standing. *See Kennedy*, 66 F.4th at 1206 ("the unique stigma associated with having a government official label someone a law breaker" is a cognizable Article III injury). And while Ms. Lau does not know yet the full extent of Defendants' investigation, the reasonable inference to draw from Defendants' decision to refer her for prosecution is that Defendants believed they had obtained

1    information about her interactions with a source—information that is exceptionally

2    sensitive under California and federal law.  *See Shoen v. Shoen*, 5 F.3d 1289, 1294–

3    96 (9th Cir. 1993) (discussing the reporter's privilege); *see also Al-Ahmed v. Twitter,*

4    *Inc.*, 648 F. Supp. 3d 1140, 1153–54 (N.D. Cal. 2023) (collection of journalist's

5    information was sufficient to show standing, even if "the privacy of his information is

6    still in debate").  A journalist whose confidential relationships were scrutinized would

7    naturally feel that her privacy and dignity were infringed.

8         As for the distress the County's misconduct caused Ms. Lau, allegations of

9    emotional harms, such as anxiety, are sufficient for the pleading stage.  *See, e.g.*,

10    *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (finding that

11    "generalized anxiety and stress" conferred standing on plaintiff); *Davis v. Astrue*, 874

12    F. Supp. 2d 856, 862–63 (N.D. Cal. 2012) (collecting cases in which emotional

13    distress was found to constitute injury-in-fact).  In insisting otherwise, Defendants

14    latch onto a line of state-tort cases finding that anxiety fails to satisfy a necessary

15    element of the *merits* of certain tort claims. *See* Dkt. 31-1 at 11–12 (citing *Medoff v.*

16    *Minka Lighting, LLC*, 2023 WL 4291973, at *9 (May 8, 2023), for negligence claim,

17    and *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377–78 (2010), for NIED and IIED

18    claims).[5]  But the two ideas are unrelated.  *See Krottner v. Starbucks Corp.*, 406 Fed.

19    App'x 129, 131 (9th Cir. 2010) (distinguishing between an "injury-in-fact for

20    purposes of Article III standing" and the question whether a plaintiff "adequately pled

21    damages for purposes of their state-law claims").  *Wong v. Jing*, for instance, explains

22    that a plaintiff alleging an NIED claim must allege that she suffered "severe

23    emotional suffering," 189 Cal. App. 4th at 1376, a degree of harm that is far above

24

25    _____

       [5]     Defendants also cite *Payne v. Office of the Commissioner of Baseball*, 705 Fed.
       App'x 654 (9th Cir. 2017) (mem.), an unpublished decision finding that the plaintiff
26    lacked standing to sue the Major League Baseball Commissioner for *injunctive* relief
       because she did not allege a "substantial risk" that she would be hit by foul balls at
27    baseball games in the future. That case has no relevance here because this suit
       involves retrospective relief; Ms. Lau has already suffered her constitutional injury.

28

the injury-in-fact requirement, which requires only that harm be "real, and not abstract," *TransUnion*, 594 U.S. at 424 (quotation omitted).  In fact, Defendants' own case makes this distinction in a privacy-related context: In *Medoff v. Minka Lighting, LLC*, the court found that plaintiff had standing because he suffered an injury-in-fact (invasion of privacy), but dismissed the claim on the merits because plaintiff failed to satisfy the "harm" element of a state-law negligence claim.  2023 WL 4291973, at *9.

As already discussed above, there is no comparable damages threshold in the First Amendment context; the Ninth Circuit has made clear that a plaintiff is not "required to show any actual injury beyond the free speech violation itself to state a constitutional claim." *Hayes*, 849 F.3d at 1212.  And it would make little sense to require a more granular discussion of Ms. Lau's emotional harms at this early date.  At the pleading stage, "general factual allegations of injury" suffice because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted).  And in a § 1983 case, compensatory damages can ultimately be "awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Tortu*, 556 F.3d at 1086.  The County's motion effectively insists on a higher showing at the pleading stage than would ultimately be required at trial.  But "the precise amount of damages is a question for later proceedings," *Sterner*, 2009 WL 160921, at *6, not a basis on which the County can avoid the merits.  The County's effort to minimize Ms. Lau's injuries is meritless.

**VI.     Ms. Lau's complaint adequately alleges that the Individual Defendants are liable in their personal capacities for retaliating against her reporting.**

Finally, the County argues that because the Individual Defendants committed their misconduct while acting in their official capacities, this case must be brought only against the County.  Supreme Court precedent explicitly rejects the argument.

PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1    In *Hafer v. Melo*, the Supreme Court addressed and dismissed the argument

2 that "officials may not be held liable in their personal capacity for actions they take in

3 their official capacity."  502 U.S. 21, 27 (1991).  "[T]o establish *personal* liability in

4 a § 1983 action, it is enough to show that the official, acting under color of state law,

5 caused the deprivation of a federal right."  *Hafer*, 502 U.S. at 25. That is, as already

6 discussed, exactly what Ms. Lau alleged here, *see* Dkt. 30 ¶¶ 26–30, 95, and there is

7 no basis for suggesting that she did not mean to hold the Individual Defendants

8 personally liable in addition to holding the County accountable, *see Price v. Akaka*,

9 928 F.2d 824, 828 (9th Cir. 1990) (rejecting the argument that "[plaintiff's] suit must

10 be against the [defendants] in their official capacities because the Complaint's

11 allegations concern [their] conduct while performing their official functions").

12    Plaintiffs frequently allege both personal-capacity claims and municipal

13 liability claims alongside each other, because the distinction has practical

14 consequences for the immunities available to—and damages available against—

15 different defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & n.13 (1985).

16 As a result, the two are anything but redundant or interchangeable.  And the Ninth

17 Circuit has already held that personal-capacity claims remain personal-capacity

18 claims even if an indemnification agreement means that the government employer

19 would ultimately foot the bill for a judgment against the individual official.  *See*

20 *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

21    The only case that Defendants offer for their view is *Zuurveen v. Los Angeles*

22 *Cnty. Dep't of Health Svcs.*, 2022 WL 14966244, at *3 (Sept. 28, 2022) (cited at Dkt.

23 31-1 at 12).  But *Zuurveen* does not support the proposition for which it is cited.  The

24 cited section simply restates the *Iqbal*/*Twombly* pleading standard; it does not say

25 anything about the distinction between personal-capacity versus official-capacity

26 lawsuits.  It is difficult, then, to understand how the County arrived at its position.

27 Both the Supreme Court and the Ninth Circuit have made clear the argument is

28

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

1    meritless.  Ms. Lau's complaint means what it says:  The Individual Defendants are

2    personally liable for their unlawful retaliation against her reporting.

3                                                * * *

4          Plaintiff stands by the adequacy of her complaint, but if this Court should find

5    any aspect lacking, Plaintiff asks for the opportunity to amend her complaint and fix

6    the deficiency.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)

7    ("[A] district court should grant leave to amend even if no request to amend the

8    pleading was made, unless it determines that the pleading could not possibly be cured

9    by the allegation of other facts." (internal quotation omitted)).

10                                     **CONCLUSION**

11         For the reasons set forth above, Ms. Lau respectfully urges the Court to deny

12   Defendants' Motions to Dismiss.

13   Dated: August 27, 2025                         Respectfully submitted,

14

15                                                  s/ Grayson Clary
                                                    *One of Plaintiff's Lawyers*

16
     Steven Art*                                    Grayson Clary, DC Bar No. 1735810*
17   Anand Swaminathan*                             gclary@rcfp.org
     Megan Pierce                                   REPORTERS COMMITTEE
18   Justin Hill*                                    FOR FREEDOM OF THE PRESS
     steve@loevy.com                                1156 15th Street NW, Suite 1020
19   anand@loevy.com                                Washington, DC 20005
     megan@loevy.com                                Phone: (202) 795-9300
20   hill@loevy.com
     LOEVY & LOEVY                                  *Admitted pro hac vice*
21   311 N. Aberdeen, 3rd Floor
     Chicago, Illinois 60607                        Michael D. Seplow (SBN 150183)
22   Phone: (312) 243-5900                          Paul Hoffman (SBN 71244)
     Fax: (312) 243-5902                            mseplow@sshhzlaw.com
23                                                  hoffpaul@aol.com
                                                    SCHONBRUN SEPLOW HARRIS
24                                                   HOFFMAN & ZELDES LLP
                                                    9415 Culver Boulevard, #115
25                                                  Culver City, CA 90232
     *Counsel for Plaintiff MAYA LAU*               Phone: (310) 396-0731
26

27

28
                                            25
     **PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEFENDANTS' MOTIONS TO DISMISS**