UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYA LAU,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF LOS ANGELES; ALEX VILLANUEVA; MARK LILLIENFELD; and TIM MURAKAMI,<br><br>    Defendants. | Case No. 2:25-cv-04766-SPG-BFM<br><br>**ORDER DENYING DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS AND GRANTING THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS [ECF NOS. 31, 32]** |

  Before the Court is the Motion to Dismiss (ECF No. 31 ("County Motion")) filed by Defendant County of Los Angeles ("County") and the Motion to Dismiss (ECF No. 32 ("Individual Defendants Motion")) filed by Defendants Alex Villanueva, Mark Lillienfeld, and Tim Murakami (the "Individual Defendants" and, together with the County, "Defendants"). The Court has read and considered the parties' submissions and concluded that the County Motion and the Individual Defendants Motion (together, the "Motions") are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the County's Motion and GRANTS the Individual Defendants' Motion.

## I. BACKGROUND

Plaintiff Maya Lau ("Lau") is a journalist who used to work for the Los Angeles Times ("LA Times"). (ECF No. 30 ("FAC" or the "Complaint") ¶ 3). Between December 2017 and September 2019, Lau published a series of articles documenting instances of police misconduct in the Los Angeles County Sheriff's Department ("LASD" or the "Department"). *See* (*id.* ¶¶ 31–47). In a December 2017 article, Lau revealed that the Department maintained a "Brady List" that "catalogued roughly 300 LASD deputies with histories of dishonesty or other misconduct that made them open to impeachment as trial witnesses." (*Id.* ¶¶ 4–5). In January 2018, Lau reported that the Los Angeles County District Attorney's Office had launched a "comprehensive review" of cases in which deputies on the Brady List offered testimony. (*Id.* ¶ 41). Subsequent reporting led California lawmakers to amend state police privacy laws, allowing Lau and others to report that "some deputies with histories of serious misconduct had indeed testified in criminal cases without prosecutors or defense counsel being informed of the deputies' prior wrongdoing." (*Id.* ¶¶ 43–45).

Lau's initial reporting led LASD to begin investigating "people it believed had disseminated the Brady List." (*Id.* ¶ 49). "LASD's investigation turned up no evidence connecting Ms. Lau to any crime." (*Id.* ¶ 50). Nevertheless, after Alex Villanueva was elected Los Angeles County Sheriff in 2018, LASD "opened a criminal investigation into Ms. Lau," led by detective Mark Lillienfeld. *See* (*id.* ¶¶ 52, 54, 57). Although Lillienfeld's investigation "did not turn up any evidence suggesting that Ms. Lau had committed a crime," in 2021, Los Angeles County Undersheriff Tim Murakami referred Lau for criminal prosecution on charges that she had "engaged in conspiracy, theft of government property, unlawful access of a computer, burglary, and receiving stolen property." (*Id.* ¶¶ 58, 60, 62). Ultimately, the California Attorney General's Office concluded that "there was 'insufficient evidence' to merit criminal charges" and, in 2024, formally declined to prosecute Lau. (*Id.* ¶ 64).

According to Lau, this investigation was one of many "in which LASD leadership opened retaliatory criminal investigations and, ultimately, referred for prosecution individuals who used their public positions to criticize Sheriff Villanueva and LASD." (*Id.* ¶ 65). For example, Villaneuva warned Los Angeles County's Inspector General, Max Huntsman, that there would be "consequences" if he "published a report criticizing . . . Villanueva's decision to rehire a deputy who had been fired for domestic violence and dishonesty." (*Id.* ¶¶ 72–73). When Huntsman did so anyway, LASD placed him under surveillance, searched through his trash, questioned his housekeeper, and repeatedly referred him for criminal prosecution. (*Id.* ¶ 73). In another example, Villanueva publicly announced that LASD had opened a criminal investigation into an LA Times reporter after she published a story detailing the Department's "cover-up of a deputy's use of excessive force." (*Id.* ¶ 67). In 2021, the California Attorney General's Office opened a civil rights investigation into LASD's use of retaliatory criminal investigations and referrals for prosecution. *See* (*id.* ¶ 81).

## II.  LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

As a threshold matter, Defendants argue that Lau lacks standing because she has not suffered a cognizable injury or a redressable harm. *See* (ECF No. 31-1 ("County Brief") at 15–17); *see also* (ECF No. 32-1 ("Individual Defendants Brief") at 12). The Individual Defendants further argue that they are entitled to qualified immunity, so the Court must dismiss Lau's claims under 42 U.S.C. § 1983 against them. *See* (Individual Defendants Brief at 8–11). The County and Individual Defendants also argue that Lau cannot state a claim because she has not adequately alleged that the government violated her constitutional rights. *See* (County Brief at 11–14; Individual Defendants Brief at 6–8). The Court will consider each argument in turn.

### A. Standing

"To establish standing in a First Amendment retaliation case, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022) (internal quotation marks and citation omitted). At this stage, Lau has adequately pled facts to show that she has suffered a cognizable harm capable of redress through a decision in her favor.

First, Lau has adequately pled a cognizable injury based on the allegation that "[s]he has suffered anxiety since learning" LACD investigated and referred her for prosecution. (FAC ¶ 84). Although a plaintiff must show that they "suffered an invasion of a legally protected interest that is concrete and particularized," *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (internal quotation marks and citation omitted), "intangible harms" may be sufficiently "concrete" to constitute an injury in fact, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). For example, "[m]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing." *Davis v. Astrue*, 874 F. Supp. 2d 856, 863 (N.D. Cal. 2012) (collecting cases); *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141–42 (9th Cir. 2010) (cognizable injury where plaintiff allegedly suffered "generalized anxiety and stress"). In particular, the Ninth Circuit has already determined that allegations of "mental and emotional distress" following purported First Amendment retaliation are enough to show an injury in fact. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989); *cf. Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *14 (E.D.N.Y. Aug. 9, 2018) (allegation of "severe and extreme emotional distress" sufficient to establish standing to assert claim for First Amendment retaliation).[1]

---

[1] In her opposition to Defendants' Motions, Lau argues that a plaintiff need not "show any actual injury beyond the free speech violation itself to state a constitutional claim." (ECF No. 36 ("Opp.") at 28 (quoting *Hayes v. Idaho Corrections Center*, 849 F.3d 1204, 1212–13 (9th Cir. 2017)). In support, Lau relies on language from the Ninth Circuit's decision in *Hayes*, but the court there made clear that it found standing based on allegations that the challenged conduct "chilled" the plaintiff's "right to privately confer with counsel." *Hayes*, 849 F.3d at 1212. Here, Lau does not claim that the challenged conduct has chilled her own exercise of First Amendment activity in any way. Because the Court finds that Lau has standing based on her alleged anxiety, it is unnecessary to determine whether an alleged First Amendment violation alone is sufficient to confer standing, without any alleged chilling effect on the plaintiff. *But see Morgan*, 874 F.2d at 1319 (injury where plaintiff alleged "defendants' actions were taken in retaliation for Soranno's exercise of first amendment rights").

Defendants' arguments as to redressability fare no better. "Because every violation of a right imports damage, nominal damages can redress [Lau's] injury even if [she] cannot or chooses not to quantify that harm in economic terms." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (internal quotation marks and citation omitted). Therefore, it does not matter if Defendants are correct that Lau is "not a journalist" and "no longer resides in Los Angeles" or that the Complaint is "premised upon an alleged retaliatory policy" no longer in place. (County Brief at 15–16). "[A]n award of nominal damages by itself can redress a past injury." *Uzuegbunam*, 592 U.S. at 282–83.

### B. Qualified Immunity

Lau brings two claims against the Individual Defendants under 42 U.S.C. § 1983. As government officials, the Individual Defendants are entitled to qualified immunity unless "(1) the facts taken in the light most favorable to the party asserting the injury show that the defendants' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018) (internal quotation marks and citation omitted). Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court begins by considering whether a retaliatory investigation and referral for prosecution violates a clearly established constitutional right.

"The plaintiff bears the burden of showing that the right at issue was clearly established." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and citation omitted). A plaintiff is not required to show a single "case is directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In 2023, the Ninth Circuit surveyed its case law and was "unable to find any binding precedent that clearly established a First Amendment violation based on a retaliatory investigation." *Moore v. Garnand*, 83 F.4th 743, 753 (9th Cir. 2023). While Lau argues that "*Moore* has little precedential value," (Opp. at 13), because the plaintiff in that case never cited to *United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007) or *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), the Court disagrees. Neither *Mayer* nor *Conant* places the "constitutional question" at issue "beyond debate," *Ashcroft*, 563 U.S. at 741, as neither decision addresses a First Amendment retaliation claim, *see Mayer*, 503 F.3d at 752–53 (criminal indictment); *Conant*, 309 F.3d at 636 (enjoining investigations to enforce the Controlled Substances Act). As such, these decisions necessarily fail to explain when such retaliation violates the First Amendment. *Cf. Moore*, 83 F.4th at 752–53, 753 n.12 (distinguishing previous holdings based on the manner in which the investigations were conducted).

Similarly, Lau does not cite any authorities that clearly establish a retaliatory investigation necessarily violates the First Amendment when it culminates in a referral for prosecution. *See* (Opp. at 23–24). Instead, she relies upon previous decisions addressing public intimidation and harassment. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 62 (1963) (government actors engaged in repeated communications referencing duty to prosecute purveyors of obscenity and noting that copies of "objectionable" publications were sent to the local police); *White v. Lee*, 227 F.3d 1214, 1229 (9th Cir. 2000) (government actors publicly accused plaintiffs of violating the law). Here, there are no allegations that Defendants publicly accused Lau of committing a crime or announced that she was at risk of prosecution. *See* (FAC ¶¶ 48–64). To the contrary, Lau only "learned that the Department's leadership [had] launched a retaliatory investigation" and "referred her for criminal prosecution" "last year." (FAC ¶ 3).

Based on the authorities Lau has identified, she has not shown that an undisclosed criminal investigation and referral for prosecution, standing alone, violate a clearly

established right. The Court therefore GRANTS the Individual Defendants' Motion to Dismiss Counts I and II of the Complaint.

### C. Liability Under *Monell*

Lau also brings a § 1983 claim against the County, alleging that the County "maintained a policy and practice of investigating and pursuing criminal charges against perceived opponents of LASD, without probable cause, in retaliation for publishing unfavorable information about LASD." (FAC ¶ 106); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (plaintiffs may sue a municipality under § 1983 for a policy, practice, or custom that operates as the moving force of a constitutional violation). In order to hold a municipality liable under *Monell*, "a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citation omitted).

The County only contests whether the government may constitutionally investigate and refer individuals for prosecution in retaliation for their protected First Amendment activity. *See* (County Brief at 11–14). Although Lau has not shown there is a clearly established right to be free from retaliatory investigation, *see supra* § III.B, Lau has plausibly alleged that Defendants violated her rights.

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). "An official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer." *Lozman v. Riviera Beach*, 585 U.S. 87, 100 (2018). The County argues, though, that Lau's claim against it cannot proceed because "[t]he initiation of a criminal investigation in and of itself does not implicate a federal constitutional right." (County Brief at 11 (quoting *Rehberg v. Paulk*, 611 F.3d 828, 850 n.24 (11th Cir. 2010)).

This may be true in the abstract. However, "to avoid running afoul of the First Amendment, the government must not investigate *for the purpose* of violating First Amendment rights." *Mayer*, 503 F.3d 740, 749–50 (9th Cir. 2007); *see also Gomez v. City of Los Angeles*, 314 Fed. Appx. 928, 930 (9th Cir. 2009) ("[Defendant] contends that the failed initiation of a criminal investigation cannot qualify as an adverse employment action [for a First Amendment retaliation claim]. We disagree."); *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (an "unwarranted criminal investigation[]" is a "severe retaliatory action[]"). Where, as alleged here, "retaliation against protected speech is elevated to the level of official policy, there is a compelling need for adequate avenues of redress." *Lozman*, 585 U.S. at 100.

The Court also rejects the argument that Lau's claim should be dismissed because she only learned of the County's investigation after the fact. *See* (County Brief at 14); *see also* (ECF No. 37 ("County Reply") at 16–17). Other courts within the Ninth Circuit have concluded that even "surreptitious" investigations and "covert" surveillance can inhibit the exercise of First Amendment rights. *See Sterner v. San Diego Police Dep't*, No. 08CV1407-IEG-JMA, 2009 WL 160921, at *2, *4 (S.D. Cal. Jan. 22, 2009) (denying motion to dismiss First Amendment retaliation claim based on "surreptitious" investigation using "undercover" police officers); *see also Mayer*, 503 F.3d at 753 (addressing whether "undercover investigation" was "carried out for the purpose of abridging First Amendment freedoms"); *Presbyterian Church v. United States*, 870 F.2d 518, 520 (9th Cir. 1989) (churches have standing to challenge "covert surveillance"). At a minimum, a reasonable jury could find that, by referring Lau for criminal prosecution, LASD's conduct had the objective effect of chilling speech. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763, 765 (6th Cir. 2019) (chilling effect where university organization had the power to refer "bias-related misconduct" to police and university disciplinary authorities).

Therefore, the Court DENIES the County's Motion to Dismiss Count III of the Complaint.

D.  **Leave to Amend**

Lau has requested leave to amend any dismissed claims. Generally, "in dismissals for failure to state a claim, a district court should grant leave to amend." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Nevertheless, a district court may, in its discretion, deny leave to amend when amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Amendment is considered futile where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted). Here, amendment would be futile as to Counts I and II. Lau has already alleged that she was not contemporaneously aware that she was under criminal investigation or subject to referral for prosecution. *See* (FAC ¶ 3). However, as discussed above, there is no clearly established right to be free from a non-public retaliatory investigation. Therefore, Lau could not plausibly allege additional facts to show that the Individual Defendants violated a clearly established constitutional right.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Individual Defendants' Motion to Dismiss Counts I and II of the Complaint without leave to amend and DENIES the County's Motion to Dismiss Count III of the Complaint. Defendant County of Los Angeles must answer the FAC within fourteen (14) days.

**IT IS SO ORDERED.**

DATED: September 30, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE